**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JUAN BARNES | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-14-2930 |
| WARDEN GRAHAM, et al. | * | |
| | * | |
| Defendants | | |
| | * | |

***

## MEMORANDUM OPINION

Plaintiff initiated the above-captioned action with a request for injunctive relief concerning his housing assignment at Western Correctional Institution (WCI). This court ordered counsel for the Division of Correction to show cause why relief should not be granted and a response was filed. Plaintiff filed a reply to the response to show cause.

Plaintiff originally sought an injunction ordering Defendants to cease: writing false adjustment charges; placing "different people" in the cell with him; denying his requests for grievance forms; retaliating against him for filing grievances and actions in this court; and "refusing to let officers sign grievance forms when there is no lieutenant around to sign or he fails to sign." ECF No. 1 at p. 1. He alleged his life was in danger and that he required placement on protective custody permanently. *Id.*

Plaintiff further alleged that Case Manager Bittinger denied his request for protective custody on three occasions and refused to do his job because he is racist. *Id.* at p. 2. He states that he gave Officer May the names of three inmates who are his enemies: DeMario Henry,

George Bobbit, and Andre Jones.[1]  Additionally, he told May it was important that Plaintiff not be housed with anyone who is Muslim or a member of the Crips gang.  *Id*.  Plaintiff explains that Cyril Williams, his documented enemy, sent messages to inmates at WCI from North Branch Correctional Institution (NBCI) "against him."  *Id*.  Plaintiff claimed there was an attempt to stab him and his mother's requests to put him in a single cell are being ignored.  *Id*.

Plaintiff added that he also requires a single cell because of "mental" issues.  *Id*.  He claimed he was "raped and fears that he may be killed or may kill out of fear or delusions."  ECF No. 1-1.  In a letter Plaintiff apparently sent to the Internal Investigations Unit for the Division of Correction he explained he has been mentally ill all of his life and that he heard voices and saw shadows.  ECF No. 1-3 at p. 2.  He explained he was worried he was going to hurt someone if they were put into a cell with him because he had "a feeling [he was] gonna (sic) do what the voices tell [him] to do again."  *Id*.  He stated that was the only way he could quiet the voices and make them go away for years.  *Id*.  He further claimed that the State's Attorney in the criminal case where he testified against Cyril Williams promised him he would be put into a single cell.  *Id*. at p. 3.  The letter was forwarded to the warden as it did not contain any information that warranted a criminal investigation.  *Id*. at p. 1.

In the Response to Show Cause, Defendants assert that while this case has been pending Plaintiff was transferred to NBCI.  ECF No. 4 at Ex. 3.  Upon arrival, Plaintiff was placed on administrative segregation in a double occupancy cell.  *Id*.  With respect to his allegations regarding his safety at WCI, Defendants state that Plaintiff was interviewed approximately one month after he arrived at WCI and a referral was made for a psychiatric history and current assessment of symptoms related to depression.  *Id*. at Ex. 1.  On February 25, 2013, Plaintiff was

---

[1]       Plaintiff also maintains that Cyril Williams is an enemy.  ECF No. 1 at p. 2.  Williams is the only enemy documented by the Division of Correction in Plaintiff's files.  *See* ECF No. 4 at Ex. 1.

provided with a psychiatric evaluation and received follow up sessions with the psychiatrist for treatment of depression and anxiety. *Id.* at Ex. 2, p. 1, ¶ 3.

Plaintiff requested an individual psychotherapy session for treatment of panic disorder and ADHD. That session was provided on April 21, 2014. ECF No. 4 at Ex. 2 pp. 1 and 3 - 4. The purpose of Plaintiff's request was to address his concerns he was not receiving treatment for ADHD and panic disorder. Policies regarding medications administered for treatment were discussed with with Plaintiff, but he argued he still required the medication and made reference to legal standards for an Eighth Amendment violation. It was noted that Plaintiff was currently being prescribed Celexa which "can target both mood and anxiety." *Id* at p. 3. While it was noted that Plaintiff had a diagnosis of depressive disorder, it was also noted that there was no evidence of ADHD or panic disorder complaints or symptoms. *Id.* Plaintiff became "very oppositional," "laughed inappropriately" at suggestions for efforts to work with him, and advised on his way out of the office that "you better have a good lawyer." *Id.* Plaintiff was described as alert and oriented with no appearance of agitation and no evidence of psychosis. *Id.* at p. 4.

On August 26, 2014, Plaintiff was again seen for a self-referral of delusions. *Id.* at p. 5. Plaintiff explained that he thought he saw his enemy in his housing unit and that someone had told him his enemy had been transferred from NBCI to WCI. *Id.* Security staff was asked to intervene regarding Plaintiff's concern and a trial of anti-psychotic medication (Resperidone) was planned. *Id.* This session is the only documented complaint of delusions or hallucinations received from Plaintiff since March of 2007. *Id.* at p. 1.

Plaintiff's later transfer to NBCI was prompted by receipt of a threatening letter from Plaintiff to psychology staff. ECF No. 4 at Ex. 1. A copy of that letter was not provided to the court. Defendants maintain that Plaintiff's only documented enemy, Cyril Williams, is not

3

housed at NBCI. *Id*. A check of the Department of Public Safety and Correctional Services online inmate locator indicates that Williams is housed at WCI.[2]

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

In his reply to Defendant's Response to Show Cause, Plaintiff states that it is incumbent upon Defendants to obtain his past medical and psychiatric records and they have failed to do so because they don't want to pay for healthcare. ECF No. 6. He amends his Complaint to add a claim for monetary damages for retaliation and states his transfer to NBCI was an attempt to make his claim moot, but the same problem may occur there. *Id*. He further alleges that he is housed in a single cell at NBCI. *Id*. Subsequent to his Reply, Plaintiff filed another emergency motion for injunctive relief stating that Wexford Health Services was denying him medication for a pain disorder. ECF No. 7.

Plaintiff's request for injunctive relief is moot. He is no longer assigned to WCI, his documented enemy is not assigned to NBCI, and, by his own admission, he is assigned to a single cell. Additionally, in a subsequently filed case in this court, Plaintiff filed correspondence indicating that he no longer wished to pursue a restraining order regarding his housing

---

[2] *See* http://www.dpscs.state.md.us/inmate/search.

assignment because he was currently assigned to a single cell and was informed there were no plans to move him to a double occupancy cell. *See Barnes v. Rounds, et al.*, Civil Action DKC-15-483 at ECF 4 (D. Md.). Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). Section 1983 actions seeking injunctive and/or declaratory relief have been declared moot when the practices, procedures, or regulations challenged were no longer in use. *See, e. g., Tawwab v. Metz*, 554 F.2d 22 (2d Cir. 1977); *Bradley v. Judges of Superior Court*, 531 F.2d 413 (9th Cir. 1976); *Shimabuku v. Britton*, 503 F.2d 38 (10th Cir. 1974); *Locke v. Board of Public Instruction*, 499 F.2d 359 (5th Cir. 1974); *Wilkinson v. Skinner*, 462 F.2d 670 (2d Cir. 1972*); Uzzell v. Friday*, 401 F.Supp. 775 (M.D.N.C.1975), aff'd in pertinent part, 547 F.2d 801 (4th Cir. 1977); *Rappaport v. Little League Baseball, Inc*., 65 F.R.D. 545 (D. Del. 1975). To the extent Plaintiff alternatively requested transfer to another state, his concern regarding his safe housing appears to have been adequately addressed by his transfer to NBCI and if those circumstances change in the future, he remains free to seek redress in this court again. Plaintiff's request for injunctive relief must be denied.

To the extent Plaintiff suggests his psychiatric and medical needs are not being addressed because Defendants have not obtained records of his hospitalizations prior to his incarceration, his claim fails. *See* ECF No. 6. There is no underlying distinction between the right to medical

care for physical ills and its psychological and psychiatric counterpart. *Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). A prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.* The *Bowring* court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not upon that care considered merely desirable. *Id.* at 48. Plaintiff has failed to establish that Defendants have exhibited a callous disregard for his psychiatric health merely by failing to obtain outside records.

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill

>individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACL U of Maryland, Inc. v. Wicomico County*, Md.  999 F.2d 780, 785 (4th Cir. 1993).

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) quoting *Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994).

In the instant case, there is evidence of legitimate efforts to address Plaintiff's requests for protection from threats of harm, real or perceived.  To the extent Plaintiff has not received every accommodation he has deemed necessary, Defendants are not required to do so as long as his constitutional rights remain unaffected.  "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."  *Meachum v. Fano*, 427 U.S. 215, 224 (1976), s*ee also Sandin v. Conner*, 515 U.S. 472 (1995), requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest.  Thus, Plaintiff's claim for monetary damages for retaliation against the named Defendants shall be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff's second request for emergency injunctive relief appears to raise an entirely separate matter not involving any of the named Defendants in this case.[3]  ECF No. 7.  The Clerk

---

[3] Plaintiff is a frequent litigator in this court and regularly files pleadings without case numbers noted on the pleadings, leaving the task of sorting out in which of his active cases the pleading should be filed to the clerical staff of this court.  Plaintiff is reminded to discontinue this practice by including case numbers on pleadings meant for existing cases and noting on other pleadings that he intends it to be a new cause of action.

7

will be directed to open a new case using that submission as the initial pleading and Plaintiff will be provided an opportunity to amend to clarify the claim as well as designate the Defendants he intends to name in that separate action.

A separate Order follows.

Date:   February 26, 2015                            /s/
                                                    DEBORAH K. CHASANOW
                                                    United States District Judge